UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                            |   |                              |
|--------------------------------------------|---|------------------------------|
| DALE TEDESCO,                              | * |                              |
|                                            | * |                              |
| Plaintiff,                                 | * |                              |
|                                            | * | Civil Action No. 06-10213-JLT |
| v.                                         | * |                              |
|                                            | * |                              |
| L. KNIFE & SON, INC., SEABOARD PRODUCTS INCORPORATED, and KELLY DUPONT, | * |                              |
|                                            | * |                              |
| Defendants.                                | * |                              |

MEMORANDUM
March 18, 2008

TAURO, J.

Plaintiff Dale Tedesco advances three counts[1] against her former employer, Seaboard Products, Incorporated ("Seaboard"); its parent company, L. Knife & Sons, Inc. ("Knife"); and one of Seaboard's employees, Kelly DuPont ("DuPont") (collectively, "Defendants"). The three counts include: (1) Defendants' alleged violation of the Family and Medical Leave Act; (2) Defendant DuPont's alleged tortious interference with contractual relations; and (3) Defendant Seaboard's alleged breach of contract for not paying Plaintiff's 2004 bonus. Before this court is Defendants' <u>Motion for Summary Judgment</u> [#18]. For reasons articulated below, this court GRANTS Defendants' Motion.

I. FACTUAL BACKGROUND

Plaintiff worked for Defendant Seaboard from October 1993 to September 2004. From approximately 1994 to 2004, she served as a Credit Manager, and reported to Office Manager

---

[1] After filing her complaint, Plaintiff dropped her first count, constructive discharge in violation of public policy. <u>See</u> <u>Stipulation of Dismissal for Count I</u> [#22].

Kelly DuPont.[2] Towards the end of her time at Seaboard, Plaintiff underwent several medical procedures.

   A. First Surgery

While at work on October 30, 2002, Plaintiff tore the meniscus in her right knee.[3] She scheduled a surgery for February 2003, but was not informed of her rights under the Family Medical Leave Act.[4] Plaintiff gave DuPont a doctor's note indicating that Plaintiff would need two weeks of leave after the surgery to recuperate. She underwent surgery on February 5, 2003, and returned to work on February 17, 2003,[5] after receiving pressure from DuPont to return to work early.[6] Returning to work two days early "was upsetting to Tedesco."[7]

   B. Second Surgery

In early 2003, Plaintiff scheduled arthroscopic surgery for her shoulder on April 25, 2003.[8] DuPont did not approve of the leave, saying she could not spare the help in the office.[9] Plaintiff rescheduled this surgery four times before finally receiving DuPont's approval.[10] Plaintiff

---

[2] Defendants' Statement of Material Facts [#20], ¶ 1 ("Defs.' Statement")

[3] Plaintiff's Opposition to Motion for Summary Judgment [#28], 3 ("Pl.'s Opposition")

[4] Id.

[5] Defs.' Statement, ¶ 2.

[6] Pl.'s Opposition, 4.

[7] Id.

[8] Id.

[9] Id. at 5.

[10] Id. at 5-6.

underwent surgery on August 11, 2003, and came back to work on August 18, 2003.[11] Upon returning, Plaintiff received an additional 500 to 600 accounts to manage.[12]

### C. Third Surgery

On March 1, 2004, Plaintiff was informed that she needed surgery again, this time to repair a torn meniscus in her left knee.[13] When Plaintiff informed DuPont that she would again need time off, DuPont replied "Jesus Dale, are you going to be out again?" and "How long will you be out this time?"[14] Plaintiff replied "As long as necessary."[15] But because Plaintiff was apprehensive about losing her job, she returned to work after her March 17, 2004 surgery on March 22, 2004.[16]

### D. Subsequent Events

On September 2 and 3, 2004, Plaintiff underwent an unspecified medical procedure.[17] Upon returning, Plaintiff learned that DuPont had docked her pay for her absence on September 3 because she "had exhausted her sick leave."[18] Upset at the loss of pay, Plaintiff requested a meeting with General Manager Ted Landers and DuPont. After the meeting, DuPont loudly

---

[11] Id. at 6.

[12] Id.

[13] Id. at 7.

[14] Id.

[15] Id.

[16] Id.

[17] Id. at 8.

[18] Id. at 9.

3

berated Plaintiff, and later told Plaintiff she could "be very easily replaced."[19] Plaintiff was "extremely shaken and embarrassed by the entire episode . . . ."[20] Thereafter Plaintiff was depressed and anxious about losing her job, could not sleep, and would hyperventilate when she thought about the situation.[21]

On September 21, 2004, Plaintiff met with Gerry Sheehan of the Kingston office to air her grievances. She explained that DuPont had denied her leave for surgery, had made derogatory comments, and had told her to retire.[22] On September 22, 2004, Plaintiff learned that other employees, including DuPont, had been reviewing accounts Plaintiff had handled.[23] Plaintiff then met with a doctor for her stress and was placed on sick leave. Consequently, as of September 24, 2004, Defendant Seaboard permitted Plaintiff twelve weeks of leave under the Family and Medical Leave Act.[24]

In December 2004, Plaintiff noticed a "$4,100 increase in a paycheck," which suggested that she had received her bonus check for the year.[25] Later she received a phone call from Vice President Jeff Annis saying that Defendant Seaboard wanted to ask her about several of her

---

[19] Id.

[20] Id.

[21] Id. at 10.

[22] Id.

[23] Defs.' Statement, ¶ 9.

[24] Pl.'s Opposition, 11.

[25] Id.

accounts.[26] Plaintiff refused.[27] According to Defendant, an outside accounting firm had concluded that there were "indicia of fraud"[28] in accounts that Plaintiff had handled. Defendant further stated that it paid Plaintiff's health insurance for 18 months after September 2004, and paid her a 401k bonus and matching contribution of approximately $4,200 on December 31, 2004.[29] But Defendant did not pay Plaintiff a $4,100 "discretionary bonus"[30] because she refused to participate in the investigation.[31]

On June 23, 2005, Plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination, which subsequently dismissed her case for lack of probable cause.[32] She filed the instant lawsuit on February 3, 2006.

II. DISCUSSION

A court may grant summary judgment only when the moving party has shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[33] The court must examine the facts in the light most favorable to the non-moving

---

[26] Id.

[27] Defs.' Statement, ¶ 14.

[28] Id.

[29] Id. at ¶ 15.

[30] Defs.' Motion for Summary Judgment [#18], 17.

[31] Defs.' Statement, at ¶ 14.

[32] Id. at ¶ 16.

[33] Fed. R. Civ. P. 56(c).

5

party, and resolve any reasonable inference in that party's favor.[34] Since this court GRANTS Defendants' Motion for Summary Judgment, the evidence shall be viewed in the light most favorable to Plaintiff.[35]

A. Violation of the Family and Medical Leave Act

Plaintiff alleges Defendants interfered with her rights under the Family and Medical Leave Act ("FMLA").[36] Specifically, Defendants "denied Tedesco time off for surgery, failed to notify her of her rights [under the FMLA], compelled her to return to work early when leave was ultimately granted and created an atmosphere in which Tedesco had to relinquish her rights for fear of losing her job."[37] Plaintiff alleges that such conduct "interfered" with her FMLA rights, causing her anxiety, depression, sleeplessness and bouts of hyperventilation.[38] Plaintiff nevertheless concedes that Defendants eventually granted the appropriate leave for all three surgeries.

As the Supreme Court has made clear, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses . . . ."[39]

---

[34] Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002).

[35] See Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) ("like the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

[36] See, e.g., 29 U.S.C.S. § 2612(a)(1)(D) (entitling employee to 12 workweeks of leave for "a serious health condition").

[37] Pl.'s Opposition, 15.

[38] Id. at 17.

[39] See Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 739-740 (2003).

Damages may include "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or . . . any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care."[40] The statute also permits "equitable relief as may be appropriate, including employment, reinstatement, and promotion."[41]

Fatal to Plaintiff's claim, however, is her inability "to demonstrate any prejudice under the FMLA."[42] Plaintiff admits that she did not suffer "loss of wages or benefits as a result of being pressured to work early."[43] Nor does she assert actual monetary losses that stem directly from the alleged violations.[44] On the factual record before this court, Plaintiff has not incurred any costs as a result of the alleged violation.

This court agrees with the Eleventh Circuit's conclusion that a "plaintiff suffers no FMLA injury when she receives all the leave she requests, and indeed is paid for most of it."[45] That court went on to hold that, "Even if the defendants have committed certain technical infractions under the FMLA, plaintiff may not recover in the absence of damages."[46] In this case, Defendant

---

[40] 29 U.S.C.S. § 2617(a)(1)(A)(i).

[41] 29 U.S.C.S. § 2617(a)(1)(B).

[42] See Cianci v. Pettibone Corp., Beardsley Piper Div., 152 F.3d 723, 728 (7th Cir. 1998).

[43] Pl.'s Opposition, 17.

[44] See 29 U.S.C. § 2617(a)(1)(A)(i)(II) (allowing for "actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care").

[45] Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1275 (11th Cir. 1999) (per curiam).

[46] Id. at 1284.

DuPont did not immediately approve of certain surgery dates that Plaintiff had initially requested, and may have even exerted pressure upon Plaintiff to return to work early. But there is no evidence that these delays and pressure visited meaningful harm upon Plaintiff. Instead Plaintiff enumerates problems such as anxiety, depression, sleeplessness and hyperventilation.[47] Other circuits,[48] as well as the District of Massachusetts,[49] have refused to provide emotional distress damages from violations of the FMLA. This court agrees with their reasoning, and hereby adopts it.

Plaintiff correctly points out that the FMLA also provides for equitable relief, such as reinstatement or promotion.[50] But Plaintiff has made no cognizable request for this kind of relief. Rather, after raising the possibility of equitable relief, Plaintiff theorizes that her stressful work environment may have occasioned economic loss, but fails to specify how or what that loss may be.[51] Accordingly, this court DISMISSES Plaintiff's FMLA count.

---

[47] Pl.'s Opposition, 17.

[48] See, e.g., Montgomery v. Maryland, 72 Fed. Appx. 17, 19 (4th Cir. 2003) (unpublished) ("Damages under the FMLA are limited to lost or denied wages, salary, benefits or other compensation. If there have been no such losses, damages are limited to actual monetary losses such as the cost of care. [Plaintiff] alleged no lost wages or cost of care, focusing instead on emotional distress, which, along with nominal and consequential damages, is not covered under the Act.") (citations omitted); Walker v. United Parcel Service, Inc., 240 F.3d 1268, 1277 (10th Cir. 2001) ("Because [plaintiff] had admittedly suffered no actual monetary losses as a result of [defendant's] asserted violation of the FMLA and has no claim for equitable relief, she has no grounds for relief under that statute."); Graham, 193 F.3d at 1284 (11th Cir. 1999).

[49] Beebe v. Williams College, 430 F. Supp. 2d 18, 19 (D. Mass. 2006) (Ponsor, J.).

[50] 29 U.S.C. § 2617(a)(1)(B).

[51] Pl.'s Opposition, 17.

B. State Law Claims: Tortious Interference and Breach of Contract

Having dismissed the federal claim, this court declines to exercise supplementary jurisdiction under 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's second claim, for tortious interference with contractual relations, and Plaintiff's third claim, for breach of contract, are hereby DISMISSED WITHOUT PREJUDICE.

III. CONCLUSION

For all of the foregoing reasons, Defendants' <u>Motion for Summary Judgment</u> is allowed as to the three counts.

IT IS SO ORDERED.

<u>   /s/ Joseph L. Tauro   </u>
United States District Judge